**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 28, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

### UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

---

EBONIE S., a child, by her mother and
next friend, Mary S.,

     Plaintiff–Appellant,

v.

PUEBLO SCHOOL DISTRICT 60;
MARILYN GOLDEN, Teacher, in her
official and individual capacities; GARY
TRUJILLO, Principal, in his official and
individual capacities; MARY JO
BOLLINGER, Executive Director of
Exceptional Student Services, in her
official and individual capacities;
LOUISE RIVAS, paraprofessional, in her
official and individual capacities;
SHARON WELLS, paraprofessional, in
her official and individual capacities;
ISABEL SANCHEZ, paraprofessional, in
her official and individual capacities;
AUDRA MARTINEZ, paraprofessional,
in her official and individual capacities;
KRISTEN POTTER, paraprofessional, in
her official and individual capacities,

     Defendants–Appellees,

------------------------------

COUNCIL OF PARENT ATTORNEYS
AND ADVOCATES, INC.; COLORADO
ASSOCIATION OF SCHOOL BOARDS,

     Amici Curiae.

No. 11-1273

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:09-CV-00858-WJM-MEH)**

Cristina F. Gomez, Holland & Hart LLP, Denver, Colorado (Jonathan S. Bender, Holland & Hart LLP, Denver, Colorado; Maureen Reidy Witt, Holland & Hart LLP, Englewood, Colorado; and Katherine Gerland, Law Offices of Louise Bouzari LLC, Englewood, Colorado, with her on the briefs), for the Plaintiff-Appellant.

Sonja S. McKenzie (Sarah A. Schreiber with her on the briefs), Senter Goldfarb & Rice LLC, Denver, Colorado, for Defendants-Appellees Pueblo School District 60, Gary Trujillo, Mary Jo Bollinger, Louise Rivas, Sharon Wells, Isabel Sanchez, Audra Martinez, and Kristen Potter.

W. Stuart Stuller (Meghan Pound with him on the briefs), Caplan and Earnest LLC, Boulder, Colorado, for Defendant-Appellee Marilyn Golden.

Kimberly F. Rich, Baker & McKenzie LLP, Dallas, Texas, for Amicus Curiae Council of Parent Attorneys and Advocates, Inc.

Kathleen Sullivan, Denver, Colorado, for Amicus Curiae Colorado Association of School Boards.

Before **LUCERO**, **HARTZ**, and **O'BRIEN**, Circuit Judges.

**LUCERO**, Circuit Judge.

This appeal requires us to decide whether the use of a particular desk in special education classrooms is permissible under the United States Constitution. The desks in question wrap around the student on the front and the sides and have a securing bar that runs behind the student's chair. A student can only remove herself by sliding under or crawling over the desk's surface when the bar is in place. In a kindergarten special-education classroom at Bessemer Academy in Pueblo, Colorado, Ebonie S., a young girl

with multiple disabilities, was often required to sit in this type of desk.  Ebonie's mother, Mary S., filed suit on her behalf under 42 U.S.C. § 1983, contending that the use of the desk violated the Fourth Amendment, the Due Process Clause, and the Equal Protection Clause, as well as the Americans with Disabilities Act ("ADA") and the Rehabilitation Act.  The district court granted summary judgment to defendants on the constitutional claims, but denied summary judgment on the statutory claims.  Plaintiff now appeals the grants of summary judgment, and exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

Plaintiff devotes much effort to arguing that the use of the desk was prohibited under Colorado law and was contrary to well-established educational standards.  But it is not our office to decide the lawfulness of the desk under state law or the wisdom of using the desk as a matter of pedagogical policy.  We firmly decline to offer any view on those questions.  Moreover, we express no view as to the claims under the ADA and the Rehabilitation Act.  We hold only that use of the desk under the circumstances presented did not violate the Fourth or the Fourteenth Amendments.

**I**

Ebonie was born addicted to cocaine.  She has been diagnosed with multiple developmental and intellectual disabilities, including Down syndrome, as well as numerous physical ailments.  Mary adopted Ebonie when she was four years old.

Ebonie began attending Bessemer Academy in 2006 at age five.  She was placed in a class for students with severe disabilities taught by Marilyn Golden.  Golden was assisted by several paraprofessionals:  Louise Rivas, Sharon Wells, Isabel Sanchez,

Audra Martinez, and Kristen Potter. Ebonie attended class from 8 am to 11 am five days a week, although she stayed until 1 pm for at least part of the year.

In Golden's classroom, there were special desks for several children, including Ebonie. The surfaces of these desks are U-shaped, such that when a student's chair is completely pulled in, the student is surrounded by the desk on three sides. The cutout portion of the desk is lined with rubber. A wooden bar, approximately one inch by two inches, runs the length of the back of the desk. When a student is sitting at the desk, the bar rests behind the student's chair, thus preventing her from pushing her chair out. A barrel bolt, akin to the fastener on the door of a restroom stall, can be used to secure the bar.[1]

Defendants maintain that Ebonie could unfasten and lift the restraining bar herself, and that Ebonie could also exit the desk by sliding under or crawling over the table. Plaintiff contends that Ebonie did not have the motor skills or range of motion required to unfasten the desk—an assertion supported by expert evidence. Plaintiff has not, however, refuted the claim that Ebonie could escape from the desk by climbing over or sliding under it.[2] Plaintiff refers to the desk as a "restraint," which is accurate insofar as the desk restricted Ebonie's movement by preventing her from pushing out her chair. It is important to note, however, that the desk did not bind or hold Ebonie down in any way.

---

[1] Plaintiff refers to the bar as a "locking bar," but that term could be misleading. Although the bar could be secured in position with the barrel bolt, none of the desks in Golden's classrooms were ever locked with a key.

[2] Plaintiff claims to have presented evidence to the contrary, but all of the evidence cited addresses Ebonie's ability to undo the bolt, not whether she could escape the desk through other means.

Golden and the paraprofessionals used the desks to discipline Ebonie and to ensure that she remained on-task and did not disrupt the classroom. Everyone agrees that Ebonie did not need the desk for orthopedic purposes, and that the desk was never used as an emergency measure to ensure her own safety or the safety of others. According to school officials, Ebonie was placed in the desk with the bar down for only a few minutes at a time. However, Mary asserted that on visits to the classroom she observed Ebonie in the desk for an hour, with the bar in place the entire time. Mary initially consented to the use of the desk when Ebonie was in a different preschool in the same district. Mary argues, however, that she consented to the desk's use only as a means of keeping Ebonie in her chair, not as a disciplinary mechanism. Additionally, Mary contends that her consent was not informed because she was unaware that the desk violated the Colorado Protection of Persons from Restraint Act. See C.R.S. § 26-20-103(1)(a).[3]

By the beginning of 2007, Mary became increasingly concerned about what she perceived as a lack of progress by Ebonie at Bessemer. In March, she met with Principal Gary Trujillo and revoked her consent for the use of the desk. But news of Mary's revocation did not trickle down to Golden and the paraprofessionals.

On April 9, 2007, Golden sent Ebonie home with what she thought was a digestive ailment. Ebonie had actually fractured her upper arm. No one knows how or when Ebonie's arm was broken. A police report concluded that she broke the bone before

---

[3] The Act prohibits schools districts from using any "restraint"—defined as "any method or device used to involuntarily limit freedom of movement"—except in cases of emergency. C.R.S. §§ 26-20-103(1)(a), 102(6). We express no view as to whether the desk ran afoul of this provision.

school when she fell at a babysitter's house.  An expert for the plaintiff, however, opined that the break was not likely the result of a fall and could have been caused by an injury related to the desk.

Mary subsequently removed Ebonie from Bessemer.  She first brought an administrative claim against the school district under the Individuals with Disabilities in Education Act, 20 U.S.C. § 1400.  A hearing officer ruled that Ebonie had been deprived of a free and appropriate education within the meaning of the Act.  Additionally, the hearing officer determined that use of the desk was prohibited by the Colorado Protection of Persons from Restraint Act, though he acknowledged that he lacked jurisdiction to award damages on that claim.  Mary and Ebonie then filed suit in federal court, naming as defendants the school district, Golden, the paraprofessionals, Principal Trujillo, and Mary Jo Bollinger, the district's Interim Director of Exceptional Student Services.  On a motion for summary judgment, the district court held that the plaintiff's Fourth Amendment, Due Process, and Equal Protection claims failed as a matter of law.  However, the court concluded that the plaintiff's claims under the ADA and the Rehabilitation Act merited consideration by a jury.  At plaintiff's request, the district court entered judgment on the constitutional claims pursuant to Fed. R. Civ. P.  54(b).[4] She now appeals.

**II**

_____

[4] The defendants do not contest the district court's 54(b) certification, and our independent review reveals no reason to disturb that determination. See Stockman's Water Co. v. Vaca Partners, L.P., 425 F.3d 1263, 1265 (10th Cir. 2005) ("[A] district court's decision to grant certification under Rule 54(b) merits substantial deference and should not be disturbed unless the district court's determination was clearly erroneous.").

We review the district court's summary judgment grant de novo. Bohn v. Park City Group, 94 F.3d 1457, 1460 (10th Cir. 1996). Summary judgment is only appropriate if there is no dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "We view the summary judgment evidence in the light most favorable to the non-movant, applying the same standard as the district court." Bertsch v. Overstock.com, 684 F.3d 1023, 1028 (10th Cir. 2012).

**A**

Students do not "shed their constitutional rights . . . at the schoolhouse gate." Tinker v. Des Moines Indep. Comm. Sch. Dist., 393 U.S. 503, 506 (1969). However, federal courts have long recognized that government action impermissible in other spheres may be proper in the school setting. See Hazelwood Sch. Dist. v. Kuhlmeier, 484 U.S. 260, 266 (1988) ("[R]ights of students in the public schools are not automatically coextensive with the rights of adults in other settings." (quotation omitted)).

To evaluate whether an in-school seizure is permissible, we ask if the challenged action was "justified at its inception" and "reasonably related in scope to the circumstances which justified the interference in the first place." Edwards ex rel. Edwards v. Rees, 883 F.2d 882, 884 (10th Cir. 1989). But before reaching this standard, a plaintiff must satisfy a preliminary hurdle: She must show that the school's restrictions rose to the level of a seizure under the Fourth Amendment. Couture v. Bd. of Educ. of Albuquerque Pub. Sch., 535 F.3d 1243, 1250 (10th Cir. 2008). In the ordinary law-enforcement setting, a seizure occurs "only if, in view of all the circumstances

surrounding the incident, a reasonable person would have believed that he was not free to leave." California v. Hodari D., 499 U.S. 621, 628 (1991). But "[w]e must think about seizures differently in the school context, as students are generally not at liberty to leave the school building when they wish." Couture, 535 F.3d at 1250-51; cf. Sandin v. Conner, 515 U.S. 472, 485 (1995) ("[C]hildren sent to public school are lawfully confined to the classroom."). For this reason, "[t]o qualify as a seizure in the school context, the limitation on the student's freedom of movement must significantly exceed that inherent in every-day, compulsory attendance." Couture, 535 F.3d at 1251.

In Couture, we considered the placement of a six-year old child in a closet-sized "time out room." 535 F.3d at 1249. We skirted the question of whether that detention constituted a seizure because we held that even if it was, it was reasonable under the Fourth Amendment. Id. at 1256. Similarly, when faced with a vice principal's twenty-minute interrogation of a student in a closed office, we assumed without deciding that a seizure had occurred and held that, if it had, it was reasonable. Edwards, 883 F.2d at 884.

In light of our precedent and the record before us, we conclude that the desk's limitation on Ebonie's movement did not "significantly exceed that inherent in every-day, compulsory attendance." Couture, 535 F.3d at 1251. Accordingly, we hold that Ebonie has failed to demonstrate a cognizable seizure under the Fourth Amendment. Three key facts support our conclusion. First, while it is undisputed that the desk restricted Ebonie's movement, the position that it forced her to assume—seated in a chair faced forward—is the standard pose required of countless schoolchildren across the nation.

- 8 -

Significantly, and in contrast to <u>Couture</u> and <u>Edwards</u>, the restrictions imposed on Ebonie did not remove her from the classroom environment. The controversial portion of the desk was its restraining bar, but there is no evidence that the bar would force a student to sit in any unusual manner.

Second, Ebonie had the ability to remove herself from the restraints imposed on her. Viewing the facts in the light most favorable to the plaintiff, we must assume that she was unable to lift the bar if it was latched in place.[5] But the plaintiff has not submitted any evidence to controvert the defendants' testimony that Ebonie could get out of the desk by crawling over or sliding under the front portion. Thus, the record indicates that Ebonie was only inhibited from getting out of the desk in one manner, though that is the easiest and most natural one—by pushing out her chair. Unlike the boy in <u>Couture</u>, who was barricaded in the time-out room with no means of escape, Ebonie had an opportunity to remove herself from her restraints, albeit in a somewhat awkward fashion. The plaintiff argues that this opportunity is irrelevant in light of the fact that Ebonie was indisputably not <u>allowed</u> to leave her desk. But a teacher's command that a student remain sitting upright in her seat is a paradigmatic example of a restriction of movement that is "inherent in every-day, compulsory [school] attendance." <u>Couture</u>, 535 F.3d at 1251.

Finally, we find significant that the restraining mechanisms were not attached to Ebonie's body. This fact distinguishes Ebonie's circumstances from the cases the

_____

[5] Despite our assumption that Ebonie was physically unable to lift the bar, we nonetheless find significant the fact that the bar was never locked with a key.

plaintiff cites in which other circuits have found in-school seizures. See Gray v. Bostic, 458 F.3d 1295, 1306 (11th Cir. 2006) (handcuffing student was unreasonable seizure); Doe ex rel. Doe v. Haw. Dep't of Educ., 334 F.3d 906, 910 (9th Cir. 2003) (taping student's head to a tree was a seizure).[6] Physically binding a student is a much more significant imposition on her dignity and bodily integrity than the use of the desk in this case.

If one or more of these facts were absent, our conclusion might be different. But in light of these three factors, we conclude that Ebonie was not seized within the meaning of the Fourth Amendment. We affirm the district court's grant of summary judgment on this claim.

**B**

Plaintiff also contends that the desk violated Ebonie's Fourteenth Amendment rights by restricting her liberty without due process. "[F]reedom from bodily restraint lies at the core of the liberty protected by the Due Process Clause." Turner v. Rogers, 131 S. Ct. 2507, 2518 (2011) (quotation omitted). But it is clear that the interest is not implicated by minimally restrictive governmental actions. Doe v. Bagan, 41 F.3d 571, 575 (10th Cir. 1994). In light of our conclusion that the restrictions placed on Ebonie did not substantially exceed those inherent in compulsory education, we conclude that Ebonie's liberty interest in freedom from bodily restraint was not implicated. Cf. Wilkinson v. Austin, 545 U.S. 209, 222-23 (2005) (holding that, in the penal context, a

---

[6] Admittedly, these cases do not employ the "substantially-exceeds" test we announced in Couture. But the results reached in those cases are certainly consonant with that standard.

- 10 -

liberty interest is implicated only by an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life").[7]  Just as the Fourth Amendment allows restrictions in the school setting that would be untenable elsewhere, Due Process rights cannot be triggered by every time-out and after-school detention.

Our conclusion is fully consonant with the Supreme Court's decision in Ingraham v. Wright, 430 U.S. 651 (1977).  In that case, the Court explained that some in-school disciplinary measures that restrict a student's movement present only a "de minimis level of imposition with which the Constitution is not concerned."  Id. at 674.  The Court held, however, that a student's liberty interest was implicated by an ordinance that authorized schools to impose corporal punishment that "inflict[s] appreciable pain."  Id. at 673-74; see also id. at 674-682 (concluding that no advance process was required before administering such punishment).  Following Ingraham, the Fifth Circuit held that a school-day detention that was not designed to cause pain fell on the de minimis side of Ingraham's line, even though more appropriate means of punishment were available. See, e.g., Hassan v. Lubbock Indep. Sch. Dist., 55 F.3d 1075, 1081-82 (5th Cir. 1995).

Although the plaintiff alleges that Ebonie's arm fracture can be attributed to the desk, there is no evidence to suggest that any defendant deliberately harmed Ebonie.  We find the absence of an intent to harm dispositive in this case.  See Ingraham at 674

---

[7] Prisons and schools are both areas in which the government may impose restrictions that would otherwise violate the Fourth Amendment and Due Process Clause. However, this is not to say that the constitutional rights of inmates and schoolchildren are coterminous.  See Dorothy J. v. Little Rock Sch. Dist., 7 F.3d 729, 732 (8th Cir. 1993) (holding that, in some regards, "public schools are simply not analogous to prisons and mental institutions").

(declaring that a liberty interest is implicated when school officials "<u>deliberately</u> decide to punish a child for misconduct by restraining the child and inflicting appreciable physical pain" (emphasis added)); <u>Daniels v. Williams</u>, 474 U.S. 327, 328 (1986) ("[T]he Due Process Clause is simply not implicated by a <u>negligent</u> act of an official . . . ."). To be sure, although any injuries were not intentional, the restraint of Ebonie was undisputedly deliberate. But the restraint itself, not rising to the level of a seizure under the Fourth Amendment, simply does not implicate the liberty interest recognized in <u>Ingraham</u>. It follows that the district court was correct to grant summary judgment on the Due Process claim.

C

The Equal Protection claim is based on the school district's use of the desks exclusively in special education classrooms. As with all Equal Protection challenges, we must first determine the appropriate standard of review. Supreme Court precedent holds that disabled individuals do not constitute a suspect class. <u>See</u> <u>City of Cleburn v. Cleburn Living Ctr.</u>, 473 U.S. 432, 442 (1985). Nevertheless, plaintiff argues that strict scrutiny is appropriate because the desk infringed on Ebonie's fundamental right to be free from bodily restraint.

We agree that freedom from bodily restraint is a fundamental right protected by the Equal Protection Clause. <u>See</u> <u>United States v. Phelps</u>, 17 F.3d 1334, 1344 (10th Cir. 1994) ("[I]t cannot reasonably be disputed that an individual's liberty is a fundamental right" under the Equal Protection Clause); <u>see also</u> <u>Hydrick v. Hunter</u>, 500 F.3d 978, 983 (9th Cir. 2007) (identifying "a liberty interest in freedom from bodily restraint" as a

fundamental right under the Equal Protection Clause), vacated on other grounds, 129 S. Ct. 2431 (2009). But in light of our analysis of the plaintiff's Fourth Amendment and Due Process claims, we conclude that the use of the desk did not infringe on this fundamental right. Cf. Hedgepeth ex rel. Hedgepeth v. Wash. Metro. Area Transit Auth., 386 F.3d 1148, 1156 (D.C. Cir. 2004) (rejecting claim that arrest implicated "fundamental right to freedom of movement" because arrest comported with Fourth Amendment standards).

All of the cited cases recognizing a fundamental right to freedom from restraint deal with incarceration or other modes of confinement. See, e.g., Foucha v. Louisiana, 504 U.S. 71, 73 (1992) (psychiatric commitment); Phelps, 17 F.3d at 1336 (criminal imprisonment); Hydrick, 500 F.3d at 983 (9th Cir. 2007) (commitment of sexual offenders). Plaintiff cites no case holding that an in-school limitation of movement, especially one that was not significantly more restrictive than those imposed on all students, implicates this fundamental right. As in the Due Process context, we are unwilling to subject every teacher's order that limits the freedom of a student to strict constitutional scrutiny.

Having concluded that use of the desk does not trigger heightened scrutiny, we consider whether "there is any reasonably conceivable state of facts that could provide a rational basis" for using the desk on Ebonie but not on regular education students. Copelin-Brown v. N.M. State Pers. Office, 399 F.3d 1248, 1255 (10th Cir. 2005). Although we are mindful of the fact that disability-based distinctions are sometimes felled on rational-basis review, see, e.g., id.; Cleburn, 473 U.S. at 450, we conclude that

this particular classification withstands scrutiny. Ebonie's disabilities presented unique pedagogical challenges, and it is certainly conceivable that requiring her to sit in a special desk was a rational response to those challenges. Although plaintiff hypothesizes that non-disabled students in mainstream classrooms might also have presented similar behavioral challenges, the record contains no evidence to support this claim. Thus, we hold that the district's use of the desk survives rational-basis review and affirm the grant of summary judgment on the Equal Protection claim.

### III

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.[8]

Plaintiff's motion for leave to file a supplemental appendix is **GRANTED**.

---

[8] Because we hold that plaintiff has not shown any constitutional violations, we do not consider the plaintiff's supervisory-liability claim or the individual defendants' qualified-immunity defenses.