FILED
United States Court of Appeals
Tenth Circuit

December 17, 2012

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENH CIRCUIT

---

ANTOINETTE GONZALES; CAROL
AUSTIN; SARAH CLOVER;
ANNETTE MORA; JAMES
PESCETTI; YOLANDA GARCIA;
NICOLE FOSTER; NICOLE
BORDLEMAY; KARI WAITES;
ARTHUR OTERO; ROBERTA
GUTIERREZ,

     Plaintiffs - Appellants,

v.

CITY OF ALBUQUERQUE; ED
ADAMS, Chief Administrative
Officer; ESTHER TENENBAUM,
Division Manager, in their individual
and official capacities,

    Defendants - Appellees.

No. 11-2248

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. 1:09-CV-00520-JB-KBM)**

---

Paul Livingston, Placitas, New Mexico, for Plaintiffs - Appellants.

Edward W. Bergmann of Seyfarth, Shaw, LLP, (David Tourek, City Attorney and
Michael I. Garcia of City of Albuquerque, on the brief), Albuquerque, New
Mexico, for Defendants - Appellees.

---

Before **KELLY**, **MURPHY**, and **GORSUCH**, Circuit Judges.

**KELLY**, Circuit Judge.

Plaintiffs-Appellants, eight operators and a supervisor at the City of Albuquerque's 311 Citizen Contact Center, appeal from the grant of summary judgment in favor of Defendants-Appellees City of Albuquerque, Ed Adams, and Esther Tenenbaum, on claims arising from their termination. <u>Gonzales v. City of Albuquerque</u>, 849 F. Supp. 2d 1123 (D.N.M. 2011). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

<u>Background</u>

The City of Albuquerque (the City) has a 311 Citizen Contact Center (CCC) to handle calls placed to the City's 311, non-emergency telephone number. Aplt. App. 383. Plaintiffs are former City employees, having worked as operators or supervisors at the 311 CCC between 2004 and 2009. <u>Id.</u> at 444–75. Defendant Ed Adams is the City's former Chief Administrative Officer (CAO). <u>Id.</u> at 14. Defendant Esther Tenenbaum is the 311 CCC Division Manager. <u>Id.</u>

The City's Merit System governed Plaintiffs' employment. <u>Id.</u> at 305. Section 3-1-6 of the Merit System Ordinance (MSO) divides employees into classified and unclassified service, and defines unclassified employees as "employees at will . . . . Such employees shall have no property interest in continued unclassified employment and may be dismissed for any or no reason."

- 2 -

Id. at 306–07.  The MSO provides that unclassified employees "shall be entitled

to all of the rights and benefits to which classified employees are entitled except

the benefits provided for in §§ 3-1-23, 3-1-24 and 3-1-25."  Id. at 307 (emphasis

added).  Sections 3-1-23 to 3-1-25 outline procedures for disciplinary actions,

grievance resolution, and appeals from suspension, demotion, and discharge.  Id.

at 305.  Finally, the MSO gives the City's CAO the authority to designate any

position as unclassified.  Id. at 307.

When the City created the 311 CCC, the CAO designated all positions as

unclassified.  Id. at 488, 491, 493, 495.  This status allowed the 311 CCC to

operate "like a private facility relative to wages, benefits, employee incentives,

hiring, and discipline procedures."  Id. at 489.

Plaintiffs acknowledge that they were unclassified.  Upon joining the 311

CCC, each Plaintiff signed a form that listed their Employment or Position Status

as "Unclassified."  Id. at 340–81.  Plaintiffs also attended training sessions where

they went over what unclassified meant.  Id. at 361, 376.  Some Plaintiffs assert

they did not understand the meaning of unclassified, but those employees never

sought clarification.  Id. at 355, 370.  At the same time, Plaintiffs knew they were

paid more than other employees because they were unclassified.  Id. at 326.

Finally, the 311 CCC has certain discipline procedures.  The Progressive

Disciplinary Action procedure, for example, is a five-step improvement plan.  Id.

at 187.  The form detailing this procedure provides that "[i]f performance

problems arise, an employee may be immediately terminated or management may choose to implement [a] progressive disciplinary action plan." Id. The form restates that all employees are unclassified and employed at will. Id. The 311 CCC also has an Immediate Termination procedure. Id. at 188. The form outlining this procedure provides that "[e]mployees may be reprimanded, suspended, demoted or terminated for any justifiable cause including, but not limited to" one of nineteen causes. Id. These causes include, but are not limited to, misconduct, using rude language to a citizen, or other disciplinary reasons. Id.

Between 2005 and 2009, Plaintiffs were terminated from the 311 CCC. Id. at 444–75. Some Plaintiffs were subject to Progressive Disciplinary Action, while others faced Immediate Termination. Id. at 371, 378. During discovery, the City provided reasons for each termination, which included the failure to satisfactorily perform job duties. Id. at 204–05.

In April 2009, Plaintiffs filed suit in New Mexico state court for (1) breach of employment contract, (2) denial of due process and equal protection,[1] (3) wrongful termination, (4) violation of the Family Medical Leave Act (FMLA), and (5) violation of the Fair Labor Standards Act (FLSA). Id. at 13–23. The City removed to federal court, id. at 10, and after discovery, moved for summary judgment. Id. at 244. The district court granted the City's motion on all claims

---

[1] Plaintiffs voluntarily dismissed their equal protection claim.

except for the FLSA claim.[2]  Gonzales, 849 F. Supp. 2d at 1129.  In a lengthy opinion, the district court found that summary judgment was appropriate because Plaintiffs, as unclassified employees, were employed at will, and (1) had no protected property interest in continued employment; (2) had not raised a genuine issue of material fact whether they had an implied employment contract; and (3) had not raised a genuine issue of material fact whether they were terminated in violation of a clear mandate of public policy.  Id.  With respect to the FMLA claim, the court found that whether treated as a claim for retaliation or interference, Plaintiffs had failed to raise a genuine issue of material fact that the City's reason for termination was pretextual or that the City had interfered with Plaintiffs' right to FMLA leave.  Id.

On appeal, Plaintiffs argue that the district court's grant of summary judgment was improper because the court weighed the evidence and failed to construe the facts in Plaintiffs' favor when determining that they were at will employees and thus rightly terminated.  Aplt. Open. Br. 4–5.


## Discussion

We review the district court's summary judgment grant de novo.  Ebonie S. v. Pueblo Sch. Dist. 60, 695 F.3d 1051, 1056 (10th Cir. 2012).  Summary judgment is only appropriate if there is no dispute of material fact and the movant

---

[2]  The parties later settled the FLSA claim.  It is not at issue on this appeal.

is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "We view the summary judgment evidence in the light most favorable to the non-movant, applying the same standard as the district court . . . ." Bertsch v. Overstock.com, 684 F.3d 1023, 1028 (10th Cir. 2012).

Plaintiffs admit that they were unclassified employees. Aplt. Open. Br. 5. They argue, however, that the City never told them that they were employed at will, and quite to the contrary, that management "impart[ed] the message" that they could only be fired for just cause. Id. at 5–6. Plaintiffs contend that they had (1) a reasonable expectation of continued employment and thus a protected property interest, and (2) an implied contract of employment that protected against arbitrary discharge. Id. at 7. They also seem to suggest that their at will status is against public policy. Id. at 6. We disagree on all points.

A.    Protected Property Interest

Plaintiffs first argue that they had a protected property interest in their continued employment. Aplt. Open. Br. 9. A property interest in the employment context consists of a "legitimate expectation in continued employment." Lighton v. Univ. of Utah, 209 F.3d 1213, 1221 (10th Cir. 2000) (quotation omitted). We look to state law to determine whether a property interest exists. Brammer-Hoelter v. Twin Peaks Charter Acad., 492 F.3d 1192, 1209 (10th Cir. 2007). "Under New Mexico law, a public employee has a protected property interest only if he has an express or implied right to continued employment." Russillo v.

Scarborough, 935 F.2d 1167, 1170 (10th Cir. 1991).

Here, Plaintiffs were unclassified employees, which meant they could be fired at will, and thus had no right to continued employment. There is no dispute that Plaintiffs were unclassified. The record includes signed forms from each 311 CCC operator indicating their status was "Unclassified." Aplt. App. 340 (Austin); id. at 357 (Bordlemay); id. at 351 (Clover, formerly Broyles); id. at 366 (Foster); id. at 373 (Garcia); id. at 331 (Mora); id. at 380 (Pescetti); id. at 318 (Waites). The record also contains testimony from 311 CCC supervisor Gonzales that she knew she was an unclassified employee. Id. at 272. Moreover, the MSO clearly defines unclassified employees as "employees at will." Id. at 307. Therefore, there is no issue of material fact on this point.

In response, Plaintiffs argue that the MSO and Progressive Disciplinary Action and Immediate Termination procedures created a legitimate expectation of continued employment. Aplt. Open. Br. 13–20. We disagree. The MSO, as discussed above, states that "[u]nclassified employees are employees at will . . . . Such employees shall have no property interest in continued unclassified employment and may be dismissed for any reason or no reason." Aplt. App. 307. Thus, the MSO did not create a legitimate expectation of continued employment.

Nor did the Progressive Disciplinary Action or Immediate Termination procedure create a legitimate expectation of continued employment. First, the Progressive Disciplinary Action form provides that an "employee may be

- 7 -

immediately terminated or management may choose to implement [a] progressive disciplinary action plan." Id. at 187. In effect, the procedure was optional. We agree with the City that this procedure is distinguishable from those found in West v. Wash. Tru Solutions, LLC, 224 P.3d 651 (N.M. Ct. App. 2009) and Mealand v. E. N.M. Med. Ctr., 33 P.3d 285 (N.M. Ct. App. 2001), which Plaintiffs cite in their brief. In both West and Mealand, the New Mexico Court of Appeals found a material issue of fact as to whether Plaintiffs had a legitimate expectation of continued employment where the disciplinary procedures were mandatory. See West, 224 P.3d at 654 ("At the time of this decision, the manager must contact Human Resources, and a specialist advisor will be assigned."); Mealand, 33 P.3d at 291 ("No employee will be terminated without prior review from Human Resources."). However, that mandatory language is absent here.

Second, the Immediate Termination procedure does not raise a material issue of fact as to whether Plaintiffs had a legitimate expectation of continued employment. The form outlining this procedure lists nineteen, non-exclusive "justifiable cause[s]" for immediate termination. Aplt. App. 188. Although the form may be inartfully worded, we do not believe that it transformed Plaintiffs into employees who could only be fired "for cause." And even if the form did this, we find, as discussed below, that just cause existed to terminate Plaintiffs.

B.    Implied Employment Contract

Plaintiffs next argue that they had an implied employment contract, which

the City breached in terminating them without cause. Aplt. Open. Br. 20. Under

New Mexico law, employment without a definite term is presumed to be at will.

Trujillo v. N. Rio Arriba Elec. Co-op, Inc., 41 P.3d 333, 341 (N.M. 2001). At

will employment is terminable "at any time and for any reason." Id. New

Mexico courts recognize two exceptions to this rule: (1) retaliatory discharge, and

(2) an implied employment contract. Id. Under the second exception, an

employer's conduct, representations, or even employee handbook may create an

implied contract that restricts an employer's power to discharge an employee.

Hartbarger v. Frank Paxton Co., 857 P.2d 776, 780 (N.M. 1993). However, such

representation must "be sufficiently explicit to give rise to reasonable

expectations of termination for good cause only." Id. at 783.

As the City points out, Plaintiffs have failed to allege specific facts that

create an implied employment contract. Instead, Plaintiffs' opening brief merely

recites the law we are to apply when determining whether an implied employment

contract exists. See Aplt. Open. Br. 20–26. Moreover, Plaintiffs seem to contend

that because our inquiry is factual in nature, there is, by default, a genuine issue

of material fact. See id. at 23. We disagree, and find Plaintiffs have failed to

raise an issue of fact that the City's policies, representations, or conduct created

an implied employment contract. At oral argument, for example, Plaintiffs'

counsel argued that the City led Plaintiffs to believe that they would be treated

like other employees. This statement, even if we assume it to be true, lacks the

specificity required to create a reasonable expectation of termination only for cause. This is especially so where Plaintiffs' employment forms expressly state they were unclassified, the MSO expressly distinguishes Plaintiffs' rights and benefits from classified employees,[3] and Plaintiffs themselves knew they were treated differently than classified employees, for example, with their increased salary. In sum, Plaintiffs have failed to raise a genuine issue of fact.

Additionally, were we persuaded that an implied employment contract existed, the City was justified in terminating Plaintiffs. The City provided adequate reason for each termination, ranging from failure to satisfactorily perform job duties to failure to return to work. Aplt. App. 204–05. These reasons all fall within the 311 CCC's non-exclusive list of "justifiable causes" for Immediate Termination and make Plaintiffs' terminations proper. See id. at 188.

C. Wrongful Termination, FMLA, and Public Policy Concerns

The City argues that Plaintiffs have not properly preserved their wrongful

---

[3] At oral argument, Plaintiffs' counsel argued that the MSO affords unclassified employees the same rights as classified employees. Counsel relied on § 3-1-6(E) of the MSO, which provides that unclassified employees "shall be entitled to all of the rights and benefits to which classified employees are entitled except the benefits provided for in §§ 3-1-23, 3-1-24 and 3-1-25." Aplt. App. 307. Counsel seems to suggest that the City's failure to include the word "rights" in the second half of the sentence evinces an intent to give unclassified employees the same rights, though not benefits, as classified employees. We are not persuaded and find the words "rights" and "benefits" to be interchangeable in this context. Simply put, unclassified employees are not entitled to classified employees' rights or benefits under §§ 3-1-23 to 3-1-25, which relate to discipline, suspension, and termination.

termination and FMLA claims on appeal. Aplee. Br. 28–29. Plaintiffs respond that their wrongful termination claims are expressed through the City's violation of the MSO and their FMLA claims are found in their "contentions concerning the disputed facts and the rules pertaining to summary judgment." Aplt. R. Br. 26. Upon review of Plaintiffs' opening brief, we find no references to the wrongful termination claim and only one cursory reference to the FMLA. We also note that Plaintiffs did not discuss these claims at oral argument. As such, we deem both arguments waived. See Toevs v. Reid, 685 F.3d 903, 911 (10th Cir. 2012).

Finally, to the extent Plaintiffs suggest that it is against public policy to label City employees as unclassified, we reject this argument. New Mexico courts have recognized the concept of at will employment in the public sector, see City of Albuquerque v. AFSCME Council 18, 249 P.3d 510, 513 (N.M. Ct. App. 2011), and we find no reason to disturb this position.

AFFIRMED.