FILED
United States Court of Appeals
Tenth Circuit

February 27, 2018

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DEBORAH L. WINSTON,

      Plaintiff - Appellant,

v.

WILBUR L. ROSS, Secretary of the
United States Department of Commerce,
in his official capacity,

      Defendant - Appellee.

No. 17-8041
(D.C. No. 2:15-CV-00037-ABJ)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **BACHARACH**, and **PHILLIPS**, Circuit Judges.
_____

    Deborah L. Winston sued her former employer, the National Weather Service

(NWS), an agency of the United States Department of Commerce, under the

Americans with Disabilities Act (ADA) and the Rehabilitation Act for discrimination

on the basis of disability and for unlawful retaliation. She appeals the district court's

grant of summary judgment in favor of NWS. We exercise jurisdiction under

28 U.S.C. § 1291, and affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. BACKGROUND

### A. *Factual History*

Ms. Winston began working for NWS as an administrative support assistant in April 2010.[1] Sometime in 2011, she informed her supervisor that she had been diagnosed with Hashimoto's thyroiditis, an autoimmune disease. Its symptoms include poor concentration and memory, fatigue, digestive issues, muscle aches, tenderness, stiffness, swelling and pain in the joints, depression, and frequent illnesses. Her symptoms and several personal events (including the deaths of her parents, a surgery, a broken arm, and a forced relocation) caused her to exhaust nearly all of her sick leave during 2011. Between April 2010 and January 2012, she used 176 hours of sick leave and 268.25 hours of annual and other leave. As a result, her supervisor placed her on "leave restriction" for one year, during which she was required to obtain prior approval for all absences and submit a doctor's note for health-related absences. Aplt. App., Vol. 1 at 125. No leave would be advanced. The leave-restriction notice stated, "Attendance at work is an essential function of your position." *Id.* at 124.

In April 2012, Ms. Winston took some leave under the Family Medical Leave Act (FMLA). The following month she learned that NWS had approved her participation in the voluntary leave transfer program for one year beginning in March 2012. The program allows federal employees to donate annual leave when

---

[1] Because we are reviewing the grant of summary judgment in favor of NWS, we recite the facts in the light most favorable to Ms. Winston. *See Gonzales v. City of Albuquerque*, 701 F.3d 1267, 1271 (10th Cir. 2012).

another employee needs additional leave for a medical emergency. *See* 5 U.S.C. § 6332.

In September 2012, NWS formally granted Ms. Winston's request for a flexible work schedule between 9 a.m. and 5:30 p.m., with core hours from 9:30 a.m. to 3:30 p.m. NWS denied her request to telework two days per week, noting that critical elements of her position, such as serving as the receptionist and routing telephone calls and visitors, could not be performed from home. NWS also denied Ms. Winston's request for intermittent time off to deal with flare-ups of her medical condition because "unscheduled leave without any notice is not a reasonable accommodation." Aplt. App., Vol. 1 at 81. NWS agreed, however, to consider granting leave without pay for flare-ups when she did not have enough accrued leave and when it was administratively feasible. NWS also denied Ms. Winston's later request to work from home for two hours per day.

In November 2012, Ms. Winston received a letter of caution from her supervisor outlining mistakes she had made on time and attendance records. She responded by filing a grievance with her union, asserting that she made the mistakes because of her medical condition and that the leave restriction prevented her from taking necessary leave. The grievance was granted the following month, and NWS rescinded the leave-restriction notice and the letter of caution.

In April 2013, an acting supervisor agreed to advance Ms. Winston sick leave, but she did not receive her full pay for the pay period. She later discovered that her

3

regular supervisor had intervened by withdrawing the advanced sick leave and changing it to leave without pay, lowering the pay she received.

In June 2013, Ms. Winston filed a complaint with the Equal Employment Opportunity (EEO) office because her participation in the leave transfer program had ended. The district court found that the outcome of the complaint was unclear, and Ms. Winston has not clarified the matter in briefs to this court.

In July 2013, Ms. Winston requested a three-day-per-week work schedule because she was taking new medications and had been diagnosed with chronic immune deficiency syndrome. NWS approved the request for a 90-day period beginning in August. Ms. Winston's attendance diminished significantly over the ensuing months. By the end of October, she had ceased working and informed her supervisors that she planned to apply for disability retirement. The 90-day period expired in November, and Ms. Winston did not return to work or make any additional requests for accommodations.

In February 2014, Ms. Winston filed another EEO complaint. The district court again found the outcome of this complaint was unclear, and Ms. Winston again has not clarified the matter in her briefs to this court. She successfully applied for disability retirement in September, and her termination from NWS became effective in October.

## B.  *Procedural History*

Ms. Winston's lawsuit asserted that (1) NWS discriminated against her by failing to provide reasonable accommodations for her disability, and (2) it retaliated against her on several occasions for requesting reasonable accommodations.

NWS moved for summary judgment, and the district court granted the motion. On the discrimination claim, the court determined that Ms. Winston failed to establish a prima facie case because she did not "present a reasonable accommodation that would enable her to maintain regular attendance and perform the essential functions of her position."  Aplt. App., Vol. 3 at 491.  On her retaliation claims, the court also determined that Ms. Winston failed to establish a prima facie case.  Two of her retaliation claims failed because she had not shown her protected activity caused the alleged retaliatory conduct.  The remaining retaliation claims failed because the incidents she alleged did not amount to NWS taking adverse employment action.

## II.  **DISCUSSION**

We review de novo the district court's grant of summary judgment, applying the same standard as the district court.  *See Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). We view the facts in the light most favorable to Ms. Winston and draw all reasonable inferences in her favor, *see Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir.

5

2013), but "unsupported conclusory allegations do not create a genuine issue of fact," *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1037 (10th Cir. 2011) (brackets and internal quotation marks omitted).

### A. *Disability Discrimination Claim*

Ms. Winston brought her disability discrimination claim under the ADA and the Rehabilitation Act. The standards for employment discrimination are the same under both. 29 U.S.C. § 794(d); *see Woodman v. Runyon*, 132 F.3d 1330, 1339 n.8 (10th Cir. 1997) ("Cases decided under section 504 of the Rehabilitation Act are . . . applicable to cases brought under the ADA and vice versa, except to the extent the ADA expressly states otherwise."). The ADA prohibits discrimination against "a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). To establish a prima facie claim Ms. Winston must establish that "(1) she is disabled within the meaning of the ADA; (2) she is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) she was discriminated against because of her disability." *Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1118 (10th Cir. 2004).

Ms. Winston argues the district court erred by concluding that no genuine issue of material fact existed on the second element. To establish that she is qualified under the ADA, Ms. Winston must show she "can perform the essential functions of the job" with or without any reasonable accommodation. *Id.* (internal quotation marks omitted). "Essential functions are the fundamental job duties of the employment position," and "[w]e will not second guess the employer's judgment

6

when its description [of those duties] is job-related, uniformly enforced, and consistent with business necessity." *Id.* at 1119 (internal quotation marks omitted).

Ms. Winston's job required physical attendance. *See id.* She does not dispute that attendance was an essential function of her job, but she contends that her participation in the leave transfer program was "a necessary accommodation for her disability which enabled her to work." Aplt. Br. at 29. But even if participation in the program allowed Ms. Winston to be absent from work, it does not follow that such participation ensured she could perform the essential functions of her job, including physical attendance. Her request to keep using leave donated by other employees would allow her to be away from work for health reasons, but it would not enable her to fulfill the essential function of physical attendance.

This is so here because Ms. Winston provided no evidence as to when she expected her medical condition to improve to the point where she would be able to perform the essential functions of her job. "Without an expected duration of an impairment, an employer cannot determine whether an employee will be able to perform the essential functions of the job *in the near future* and therefore whether the leave request is a 'reasonable' accommodation." *Cisneros v. Wilson*, 226 F.3d 1113, 1130 (10th Cir. 2000), *overruled on other grounds by Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001). The district court did not err by granting summary judgment in NWS's favor on this claim.

## B. *Retaliation Claim*

"[T]o establish a prima facie case of retaliation under the ADA, [the employee] must demonstrate (1) that [she] engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *C.R. England*, 644 F.3d at 1051 (internal quotation marks omitted).

As discussed below, two alleged retaliatory actions—the January 2012 leave restriction and the April 2013 revocation of advanced sick leave—lack an adequate causal connection to protected activity. The remaining retaliatory incidents Ms. Winston alleged do not amount to material adverse actions.

### 1. **Lack of Causal Connection**

A plaintiff can satisfy the third element by adducing "evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Id.* (internal quotation marks omitted). In addition, "a plaintiff must show an adequate request for an accommodation sufficient to qualify as protected activity." *Foster v. Mountain Coal Co.*, 830 F.3d 1178, 1187 (10th Cir. 2016). "[B]efore an employer's duty to provide reasonable accommodations . . . is triggered under the ADA, the employee must make an adequate request," making clear that she wants assistance for her disability. *C.R. England*, 644 F.3d at 1049; *see also Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996) ("An accommodation is something concrete—some

specific action required of the employer."). "The request for accommodation must be sufficiently direct and specific, giving notice that [the employee] needs a special accommodation." *C.R. England*, 644 F.3d at 1049 (internal quotation marks omitted).

### a. *Leave restriction*

The district court found that Ms. Winston did not "cite any evidence in support of her statement that she requested accommodations in October, November, and December 2011" and that the first accommodation she requested was FMLA leave in April 2012. Aplt. App., Vol. 3 at 473. The court concluded she therefore failed to establish a causal connection between any protected activity and NWS's placing her on leave restriction in January 2012. *See Jones v. United Parcel Serv., Inc.*, 502 F.3d 1176, 1195 (10th Cir. 2007) ("Unless an employer knows that an employee is engaging in protected activity, it cannot retaliate against that employee *because* of the protected conduct, as required by statute.").

Ms. Winston contends this was error, citing her answer to an interrogatory stating that in 2011, she "had conversations with" her supervisor about her medical condition and "explained to him that . . . sick leave was necessary to enable [her] to work." Aplt. App., Vol. 3 at 423. In the same answer, she also stated that in December 2011 she contacted the NWS regional office to inquire about her ability to take sick leave and that when her supervisor gave her the leave-restriction notice he told her "that he issued it because [she] had contacted the Regional Office." *Id.*

9

This evidence does not establish that Ms. Winston made a specific request for any accommodation before she was placed on leave restriction. Although she alleges she informed her supervisor about her medical condition, she fails to cite any evidence that she informed NWS of her desire for accommodations. Further, Ms. Winston does not point to having requested any accommodation in 2011 that would have enabled her to attend her job. "[T]he term reasonable accommodation refers to those accommodations which presently, or in the near future, enable the employee to perform the essential functions of [her] job." *Hudson v. MCI Telecomms. Corp.*, 87 F.3d 1167, 1169 (10th Cir. 1996) (internal quotation marks omitted). We therefore agree there is no genuine issue regarding a causal connection between Ms. Winston's inquiries during 2011 and the leave restriction.

b. *Advanced sick leave revocation*

Ms. Winston argues that the district court erred by determining that she failed to establish a causal connection between her protected activity and her receiving less pay than she expected for a pay period in April 2013. According to Ms. Winston, an acting supervisor had approved advanced sick leave so she could receive her full pay for the pay period, but her regular supervisor then revoked that approval without informing her in advance. Ms. Winston does not dispute the district court's finding that her most recent protected activity before this pay incident was filing a grievance with the union in November 2012.

Ms. Winston has not shown a causal connection between these events. "A retaliatory motive may be inferred when an adverse action closely follows protected

10

activity. However, unless the [adverse action] is *very closely* connected in time to the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (citation omitted). We have held that without additional evidence, protected activity is not entitled to a presumption of causation when four months have elapsed between the action and the alleged retaliation, *see Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1208 (10th Cir. 2007), or even three months, *see Piercy v. Maketa*, 480 F.3d 1192, 1198 (10th Cir. 2007). Here we have five. Ms. Winston fails to cite any evidence beyond temporal proximity that would establish a causal connection between her protected activity and the pay incident. Accordingly, there is no genuine issue of material fact as to this causation element of Ms. Winston's prima facie case of discrimination.

2. **Materially Adverse Action**

To establish the second element of a retaliation claim, a plaintiff must show that the employer's action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted). *Burlington Northern* recognized a different standard than some courts had been applying. *See Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 n.2 (10th Cir. 2006) (noting the Supreme Court's rejection in *Burlington Northern* of the adverse-employment-action standard).

11

Although the district court cited *Burlington Northern*, Ms. Winston argues the court erred because it relied on earlier cases that required the plaintiff to make a more demanding showing than *Burlington Northern* requires. *See, e.g.*, *Medina v. Income Support Div.*, 413 F.3d 1131, 1137 (10th Cir. 2005) (holding that a reprimand constitutes an adverse employment action only "if it adversely affects the terms and conditions of the plaintiff's employment"); *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 533 (10th Cir. 1998) (holding that "unsubstantiated oral reprimands and unnecessary derogatory comments . . . are not included within the definition of adverse action absent evidence that they had some impact on the employee's employment status") (internal quotation marks omitted). As we explain below, however, the other incidents that Ms. Winston alleged were retaliatory do not pass muster under *Burlington Northern*.

Ms. Winston alleged as incidents of retaliation the performance evaluation she received in October 2012, the initial denial of her request for time off to vote that same month, the letter of caution she received in November 2012, the repeated requests for a doctor's note she received when she sought to use sick leave, and the added scrutiny and criticism of her work that persisted while she worked for NWS. But the record does not support Ms. Winston's characterization of these incidents as materially adverse. In *Burlington Northern*, the Supreme Court distinguished "*material* adversity" from "trivial harms," stating that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it might well have dissuaded a reasonable worker from

12

making or supporting a charge of discrimination." 548 U.S. at 68 (internal quotation marks omitted).

The record shows that Ms. Winston's performance evaluation was generally positive, she ultimately received time off to vote, and the letter of caution was premised on mistakes she admitted to having made. Ms. Winston has not shown that NWS's requiring a doctor's note for sick leave or that exercising additional scrutiny of her performance amounted to materially adverse action. She therefore has not shown that these incidents would deter a reasonable employee from complaining about discrimination. *See id.* ("[N]ormally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence."). Although Ms. Winston is correct that the *Burlington Northern* standard for retaliation superseded the standard in some of the cases the district court relied on, she cannot show under *Burlington Northern* that these incidents were materially adverse to support her retaliation claims.

## III. **CONCLUSION**

We affirm the district court's judgment in favor of NWS.

Entered for the Court


Scott M. Matheson, Jr.
Circuit Judge

13