# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2011-NMCA-021

Filing Date: January 27, 2011

Docket No. 29,654

CITY OF ALBUQUERQUE and
THE CITY OF ALBUQUERQUE
PERSONNEL BOARD,

      Plaintiffs-Appellants,

v.

AFSCME COUNCIL 18, ON
BEHALF OF AMY PUCCINI,

      Defendant-Appellee.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Alan M. Malott, District Judge

French & Associates, P.C.
Paula I. Forney
Albuquerque, NM

Robert A. White, City Attorney
Shelley Mund, Assistant City Attorney
Albuquerque, NM

for Appellants

Youtz & Valdez, P.C.
Shane Youtz
Marianne Bowers Lopez
Albuquerque, NM

for Appellee

## OPINION

**WECHSLER, Judge.**

1

**{1}** Appellant, the City of Albuquerque (the City), appeals the district court's order remanding this case to the City's Personnel Board (the Personnel Board) to provide Appellee Amy Puccini with a full due process hearing to determine the propriety of her termination under the City of Albuquerque Merit System Ordinance (Merit Ordinance). The City raises three issues on appeal: (1) Puccini had no protected property interest in her position and could be terminated at-will under the Merit Ordinance; (2) the district court applied an incorrect standard of "de novo whole record" review rather than a substantial evidence test in reversing the decision of the Personnel Board; and (3) the district court erred by not remanding the case to the Personnel Board for entry of findings of fact and conclusions of law after determining that the failure to enter findings of fact and conclusions of law was contrary to law.

**{2}** We hold that (1) as a result of the City's actions that amounted to "positive action" under the Merit Ordinance, Puccini was a non-probationary employee and therefore was entitled to a termination hearing under the Merit Ordinance; (2) the district court did not apply the incorrect standard of review; and (3) the district court did not err by not remanding the case to the Personnel Board for entry of findings of fact and conclusions of law. Accordingly, we affirm.

**BACKGROUND**

**{3}** Puccini was hired as a Customer Service Representative by the City's Transit Department beginning July 23, 2007. The Merit Ordinance governs employment by the City, including hiring, promotion, and discharge, as well as the general regulation of City employees. *See* Albuquerque, N.M., Code of Ordinances ch. 3, art. 1, §§ 3-1-1 to -28 (1978) (amended through 2010). Under the Merit Ordinance, an employee must serve a six-month probationary period following the original appointment date. *See* § 3-1-8(A)-(B). Puccini's probationary period lasted through January 21, 2008.

**{4}** On January 10, 2008, Puccini's immediate supervisor, the Transit Department's Customer Service Manager, sent a memorandum concerning Puccini to the head of the Transit Department (the Transit Director) titled "Completion of Probation," which "recommend[ed] satisfactory completion of the probationary period resulting in a change from probationary to non-probationary status, effective January 21, 2008." The Transit Director signed this memorandum on the same day as "APPROVED." The next day, January 11, 2008, the Transit Director approached Puccini, congratulated her on her successful completion of the probationary period, and "welcomed her aboard." However, later that same day, Puccini received a memorandum from her supervisor extending her probation for an additional thirty days and stating that, with the additional thirty days, her probation would not end until February 21, 2008. The Transit Director signed this memorandum as "APPROVED" on January 11, 2008.

**{5}** On February 5, 2008, Puccini was informed that she was being terminated from employment with no further justification. The memorandum notifying Puccini of her

termination stated that she was a probationary employee, and, as such, she did not have a legitimate entitlement to continued employment and may be terminated for any or no reason.

**{6}**     Puccini filed a grievance through her union, Appellee AFSCME Local 2962, appealing her termination without cause and arguing that her status changed to non-probationary on January 21, 2008.  Under the procedures of the Merit Ordinance, a hearing officer held an evidentiary hearing to determine the jurisdiction of the Personnel Board, or more specifically, whether Puccini was a non-probationary employee at the time of her termination and therefore entitled to a hearing to determine if there was cause for termination.  The hearing officer proposed findings of fact and conclusions of law to the Personnel Board, concluding that Puccini's status changed on January 21, 2008, and, as of that date, she was no longer a probationary employee.  As such, the hearing officer recommended that the Personnel Board hear Puccini's appeal of her termination.  The Personnel Board rejected the recommendations of the hearing officer without issuing independent findings of fact or conclusions of law.

**{7}**     Pursuant to Rule 1-074 NMRA, Puccini appealed to the Second Judicial District Court.  The district court reversed the judgment of the Personnel Board, holding that (1) the City's failure to perform a performance evaluation, as per the City's Personnel Rules and Regulations, was contrary to law; (2) the January 10, 2008 memorandum and the welcoming aboard from the Transit Director constituted "positive action" to change Puccini's status from probationary to non-probationary under Section 3-1-8(C); and (3) the Personnel Board's failure to enter findings of fact and conclusions of law was contrary to law.  The district court ordered that the City provide a full due process hearing on the propriety of the termination in compliance with the Merit Ordinance or, alternatively, to restore Puccini to her prior job, with non-probationary status, back pay, and applicable benefits.  The City timely filed a petition for writ of certiorari, pursuant to Rule 12-505 NMRA, which this Court granted.

**STANDARD OF REVIEW**

**{8}**     Upon a grant of a petition for writ of certiorari under Rule 12-505, this Court "conduct[s] the same review of an administrative order as the district court sitting in its appellate capacity, while at the same time determining whether the district court erred in the first appeal." *Rio Grande Chapter of the Sierra Club v. N.M. Mining Comm'n*, 2003-NMSC-005, ¶ 16, 133 N.M. 97, 61 P.3d 806.  "In reviewing a decision of the Personnel Board, we apply a whole-record standard of review." *Smyers v. City of Albuquerque*, 2006-NMCA-095, ¶ 5, 140 N.M. 198, 141 P.3d 542 (internal quotation marks and citation omitted).  "We independently review the entire record of the administrative hearing to determine whether the Board's decision was arbitrary and capricious, not supported by substantial evidence, or otherwise not in accordance with law." *Id.* (alteration, internal quotation marks, and citation omitted).  When reviewing an administrative agency's conclusions of law, we review de novo. *See id.*

**{9}** In this appeal, the City is asking this Court to review (1) whether the district court erred in holding that Puccini was a non-probationary employee who had a protected property interest in her position under the Merit Ordinance; and (2) whether the district court erred by not remanding to the Personnel Board for findings of fact and conclusions of law after determining that the Personnel Board acted contrary to law in not issuing independent findings of fact and conclusions of law when rejecting the proposal of the hearing officer. These issues require construction of the Merit Ordinance and are legal inquiries that we review de novo.

**{10}** The City argues that the district court erred in applying "an incorrect standard of de novo whole record review" rather than a substantial evidence test in overturning the decision of the Personnel Board. However, a district court acting in an appellate capacity will only apply a substantial evidence test when reviewing an administrative agency's factual findings. *See Montano v. N.M. Real Estate Appraiser's Bd.*, 2009-NMCA-009, ¶ 8, 145 N.M. 494, 200 P.3d 544 ("We will not disturb the agency's factual findings if supported by substantial evidence, although we engage in a whole record review."). As previously discussed, conclusions of law are reviewed de novo. *Id.* The review in this case was whether the Personnel Board's decision in holding that Puccini was a probationary employee and in failing to issue findings of fact was contrary to law, namely the Merit Ordinance. The district court noted that "[t]here is little if any dispute as to the facts of this case." As the issues are legal inquiries with no factual disputes, the district court did not err in engaging in de novo review instead of applying a substantial evidence test.

## PUCCINI'S EMPLOYEE STATUS AT THE TIME OF HER TERMINATION

**{11}** As a general principle of due process law, public employees with a legitimate expectation of continued employment are protected from termination without just cause, notice, and opportunity to be heard. *See Cockrell v. Bd. of Regents of N.M. State Univ.*, 1999-NMCA-073, ¶ 10, 127 N.M. 478, 983 P.2d 427. Therefore, in order for Puccini to be entitled to a full due process hearing, as determined by the district court, she must have had a reasonable expectation of continued employment with the City under the Merit Ordinance. *See id.* ¶ 11 ("[The plaintiff] must do more than invoke the due process clause; he must make a particularized showing under the facts of this case that the . . . personnel rules created a clearly established right to his continued employment[.]").

**{12}** Under the Merit Ordinance, an employee of the City must serve a probationary period of six months. *See* § 3-1-8(B). During this probationary period, the "probationary employee does not have a legitimate entitlement to continued employment and may be terminated for any or no reason." Section 3-1-8(A). As a result, "[a]t any time during the probationary period, an employee may be dismissed for any reason which is not prohibited by law." Section 3-1-8(C). As discussed below, after the six-month probationary period, an employee's status may change to non-probationary, entitling the employee to the full plethora of rights and benefits, including that the employee can only be disciplined for "just cause." *See* § 3-1-23(A)(1). Moreover, when a non-probationary employee is disciplined,

4

the employee is entitled to a hearing before the Personnel Board that comports with the requirements of due process. *See generally* § 3-1-25.

**{13}** As we have stated, at the expiration of the six-month probationary period, in order for the employee to become a non-probationary employee, the Merit Ordinance requires "positive action by the department head or his designee." Section 3-1-8(C). Alternatively, "the department head or his designee may extend the probationary period for a maximum of 60 days." *Id.* Additional procedural requirements for the change of status from probationary to non-probationary are found in the City's Personnel Rules and Regulations. Section 307.1 of the Personnel Rules and Regulations provides:

> Within fifteen (15) work days before an employee is due to complete the probationary period the department director must submit to the Human Resources Department a performance evaluation and a personnel action form, with an effective date, indicating a change in status of the employee as follows:
>
> A. Satisfactory completion of the probationary period resulting in a change from probationary to non-probationary; or
>
> B. Extension of the probationary period for a maximum of sixty (60) days, such extension may be requested only one time; or
>
> C. Termination of the probationary employee.

**{14}** The district court held that the Transit Director successfully converted Puccini to non-probationary status by signing and approving her supervisor's recommendation memorandum for permanent status on January 10, 2008, especially considering that "the director further manifested his support for the employee's successful completion of her probationary period with an added personal declaration 'welcome aboard.'" The district court found that these actions by the Transit Director constituted "positive action" under the Merit Ordinance, Section 3-1-8(C), and therefore it concluded that they were sufficient to convert Puccini to non-probationary status, effective January 21, 2008.

**{15}** The City argues that the district court erred in determining that Puccini had a protected property interest in her position, and therefore, could not be terminated as an at-will employee under the Merit System. Specifically, the City argues that Puccini's probationary period was extended by the memorandum approved by the Transit Director on January 11, 2008, which was during the original six-month probation period, and, as a result, she was still a probationary employee with no rights and benefits of a non-probationary employee at the time of her termination. The City contends that the district court erred in determining that the Transit Director took the requisite "positive action" necessary to convert Puccini to non-probationary status before the Transit Director reversed course and informed her that he was extending her probationary period.

5

**{16}**     As we have discussed, the Merit Ordinance and accompanying personnel rules give the City three options as to an employee whose probationary period is ending: (1) termination; (2) conversion to non-probationary status through "positive action" by a department head; or (3) extension of the probationary period for a maximum of sixty days. The question becomes whether the Transit Director took the requisite "positive action" to convert Puccini from probationary to non-probationary status prior to the purported extension of the probationary period by the January 11, 2008 memorandum. If the actions of the Transit Director rose to the level of "positive action," as contemplated by the Merit Ordinance, the attempt to extend the probationary period by the January 11, 2008 memorandum would have no effect because a non-probationary employee's probationary period could not be extended.

**{17}**     Because the Merit Ordinance and the Personnel Rules and Regulations fail to provide a definition of "positive action," we use the rules of statutory construction to determine its meaning. *See San Pedro Neighborhood Ass'n v. Bd. of Cnty. Comm'rs of Santa Fe Cnty.*, 2009-NMCA-045, ¶ 12, 146 N.M. 106, 206 P.3d 1011 ("[T]he interpretation of [an] ordinance is a question of law that we review de novo, using the same rules of construction that apply to statutes."). In our statutory construction, we define terms in a statute using their ordinary meaning unless the Legislature indicates a different intent. *High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998-NMSC-050, ¶ 5, 126 N.M. 413, 970 P.2d 599.

**{18}**     We turn to the ordinary meaning of "positive action."  "Positive" is defined as "arbitrarily or formally laid down or imposed . . . expressed clearly, certainly, or peremptorily with no doubt, reservation, or unclarity." Webster's Third New International Dictionary 1770 (Unabridged 1993). "Action," in this context, is defined as "a voluntary act of will that manifests itself externally . . . or that may be completed internally." *Id.* at 21. Using these definitions, we believe that "positive action," as contemplated by the Merit Ordinance, occurs when a department head manifests to a probationary employee that the employee's status has been changed to non-probationary, by a voluntary act that is express and without doubt, reservation, or unclarity.

**{19}**     Applying this definition of "positive action" to the facts, the Transit Director took the requisite "positive action" to successfully convert Puccini from probationary to non-probationary status.  Puccini's supervisor provided a memorandum "recommend[ing] satisfactory completion of the probationary period," effective January 21, 2008, to the Transit Director. The Transit Director acted on this recommendation and "approved" the recommendation the same day. The Transit Director followed this action by personally congratulating Puccini on completing her probation and "welcom[ing] her aboard" the next day. Thus, the Transit Director's actions indicate that a definitive and clear decision regarding Puccini's status was made January 10, 2008, and the Transit Director notified her both in writing and in person of the decision. These actions therefore fit the definition of voluntary acts, that expressly and without doubt, reservation, or unclarity, manifested to Puccini that she was no longer a probationary employee effective January 21, 2008.

**{20}** The City argues that under the City's Personnel Rules, "it was up to the City's Human Resource Office to take action to remove [Puccini] from her probationary status," and the Transit Director was only making a "recommendation" of successful completion of the probationary period by approving the January 10, 2008 memorandum. In other words, the City essentially argues that "positive action" includes the processing by the City's Human Resources Department and must be completed before an employee is considered non-probationary. In support, the City cites the language in Personnel Rules and Regulations, Section 307.1, requiring the department director to provide a status change form and an employee evaluation within fifteen work days before the probationary period ends to the City's Human Resources Department for processing, as proof that the January 10, 2008 memorandum was only a recommendation that was "not valid before being processed by the City's Human Resources Department."

**{21}** This argument directly contradicts the language of Section 3-1-8(C) of the Merit Ordinance, which specifically provides that the change in status occurs upon the "positive action" of the department head, not on the processing of the department head's recommendation by the City's Human Resources Department. Personnel Rules and Regulations, Section 307.1, is simply a procedural rule mandating that proper paperwork be submitted to the City's Human Resources as opposed to providing any substantive requirements as to when an employee's status is changed. The Merit Ordinance is clear that it is the department head who is authorized to make the election on status change and the decision is effective upon "positive action" of the election.

**{22}** Further, there is nothing in the Merit Ordinance or accompanying rules to indicate that the Human Resources Department has the ability to override or change the decision of a department head as to whether an employee should be converted to non-probationary status. Thus, to characterize the Transit Director's approval of the January 10, 2008 memorandum as a recommendation of a status change is incorrect. Therefore, Puccini was successfully converted to non-probationary status despite the change in status form and performance evaluation not being processed by the City's Human Resources Department.

**{23}** We briefly turn to the City's argument that the district court erred by determining that the City's failure to conduct a performance evaluation of Puccini, in accordance with the Personnel Rules and Regulations, created a protected property interest. We also reject this argument, as the district court made no such determination. The district court simply held that "[the City's] failure to perform an employment evaluation was contrary to law," not that a property interest was created by such failure. As the City fails to argue that the district court erred in determining that the failure to perform a performance evaluation was contrary to law, we decline to review this portion of the district court's opinion.

**REMAND FOR FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**{24}** The City also argues that the district court erred by not remanding the case to the Personnel Board to enter findings of fact and conclusions of law as required by the Merit

7

Ordinance. Under the Merit Ordinance, an employee can appeal a discharge to the Personnel Board. *See* § 3-1-25(A). "The Personnel Board shall refer the appeal to a Personnel [h]earing [o]fficer to conduct an evidentiary hearing [and t]he [h]earing [o]fficer shall prepare and submit to the Board and the parties a report containing a summary of the evidence taken at the hearing and proposed findings of fact." Section 3-1-25(C). Once this evidentiary hearing is held and findings of fact are issued by the hearing officer,

> [t]he Board may take one of the following actions:
>
> (1) Accept the recommendation of the [h]earing [o]fficer by accepting the [h]earing [o]fficer's [p]roposed [f]indings of [f]act and entering conclusions of law consistent with the findings;
>
> (2) Reverse or modify the recommendation of the [h]earing [o]fficer by making its own [f]indings of [f]act consistent with the evidence and entering conclusions of law consistent with the findings; or
>
> (3) Remand the matter to a Personnel [h]earing [o]fficer for further hearing.

Section 3-1-25(E).

**{25}** The district court held that the Personnel Board acted contrary to law in reversing the recommendation of the hearing officer without issuing its own findings of fact and conclusions of law. The hearing officer conducted an evidentiary hearing and proposed findings of fact and conclusions of law, concluding that Puccini was a non-probationary employee at the time of her termination. The Personnel Board rejected these findings and reversed the hearing officer simply by writing "not accepted/reversed" below the hearing officer's signature on the hearing officer's report. The Personnel Board did not issue separate findings or conclusions, and the district court determined that, in failing to do so, the Personnel Board acted contrary to the mandates of Section 3-1-25(E). The district court held that the decision of the Personnel Board should be reversed as a result of this failure.

**{26}** The City does not argue that the conclusion of the district court was incorrect as to whether the Personnel Board acted contrary to Section 3-1-25(E). Instead, it argues that the district court should have remanded the case to the Personnel Board to issue findings and conclusions of law. For this proposition, the City cites *Lewis v. City of Santa Fe*, 2005-NMCA-032, ¶ 20, 137 N.M. 152, 108 P.3d 558 (stating that "if the record is insufficient . . . we . . . can remand for creation of an adequate record"), and *State ex rel. Hughes v. City of Albuquerque*, 113 N.M. 209, 215, 824 P.2d 349, 355 (Ct. App. 1991) (remanding case to the Personnel Board for ambiguous findings of fact).

**{27}** In *Lewis*, the respondents argued that the reviewing court should dismiss an administrative decision because of an inadequate record. 2005-NMCA-032, ¶ 20. This

Court simply noted that if there was in fact an inadequate record, "should it prove helpful, the district court is at liberty to remand for the purpose of creating a record that is adequate for review." *Id.* *Lewis* does not mandate that this Court or the district court remand for development of a record when further development will not assist the reviewing court.

**{28}** *Hughes* involved a situation in which the findings of fact were determined to be so ambiguous that this Court was unable to determine the grounds the Personnel Board relied upon in reaching its decision. 113 N.M. at 215, 824 P.3d at 355. Specifically, this Court could not determine whether an employee contesting his termination had violated a general directive or a specific directive that was determinative of whether there were proper grounds for termination. *Id.* As with *Lewis*, *Hughes* does not require that a reviewing court remand to an administrative agency when there are deficient findings of fact and conclusions of law if the remand would not assist the reviewing court.

**{29}** In this case, there is no such inadequacy in the record or any ambiguity as to the grounds relied upon by the Personnel Board when making its determination that Puccini was still a probationary employee. The facts of the case are uncontested. The district court was, and this Court is, faced with largely legal determinations as to whether the actions of the Transit Director constituted "positive action" under the Merit Ordinance and whether the standard of review used by the district court was correct. These are de novo determinations. Under these circumstances, it would be of no benefit to remand this case to the Personnel Board for findings of facts and conclusions of law. The district court did not err by not remanding the case to the Personnel Board for compliance with Section 3-1-25(E).

**CONCLUSION**

**{30}** For the foregoing reasons, we affirm.

**{31}** **IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**MICHAEL E. VIGIL, Judge**

_____
**TIMOTHY L. GARCIA, Judge**

**Topic Index for *City of Albuquerque v. AFSCME Council 18*, Docket No. 29,654**

**AL**                    **ADMINISTRATIVE LAW AND PROCEDURE**

| | |
|---|---|
| AL-AA | Administrative Appeal |
| AL-DU | Due Process |
| AL-JR | Judicial Review |
| AL-SR | Standard of Review |
| | |
| **AE** | **APPEAL AND ERROR** |
| AE-RM | Remand |
| AE-SR | Standard of Review |
| | |
| **EL** | **EMPLOYMENT LAW** |
| EL-GR | Employee Grievances |
| EL-EP | Employer's Policies |
| EL-EA | Employment at Will |
| EL-LU | Labor Unions |
| EL-TE | Termination of Employment |