This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**JOCELYN HOTLE, DAN RAND,**
**and MIKE ALEXANDER,**

Petitioners-Appellants,

v.                                                                      **NO. A-1-CA-35418**

**STATE OF NEW MEXICO PUBLIC**
**EMPLOYEES RETIREMENT BOARD,**

Respondent-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**David K. Thomson, District Judge**

Youtz & Valdez, P.C.
Shane Youtz
Stephen Curtice
James A. Montalbano
Albuquerque, NM

for Appellants

Karen A. Risku
Misty M. Schoeppner
Susan G. Pittard
Santa Fe, NM

for Appellee

**MEMORANDUM OPINION**

**FRENCH, Judge.**

{1}   Jocelyn Hotle, Dan Rand, and Mike Alexander (Petitioners) appeal the district court's denial of Petitioners' motion for rehearing following the district court's affirmance and adoption of the Public Employee Retirement Board's (PERB) order, which found that Petitioners, employed by the County of Bernalillo (the County) as Court Security Officers (CSO), qualified for coverage under Municipal General Member Coverage Plan 3 (General Member Plan 3), not Municipal Police Member Coverage Plan 5 (Police Plan 5). We affirm.

**BACKGROUND**

{2}   In June 2011, the County's human resources office contacted the Public Employees Retirement Association's (PERA) deputy director to determine whether the position of Security Specialist was qualified for Police Plan 5. According to the Public Employees Retirement Act, NMSA 1978, §§ 10-11-1 to -142 (1987, as amended through 2016), Police Plan 5 applies to a PERA member who "is employed as a police officer by an affiliated public employer, other than the state, and who has taken the oath prescribed for police officers[.]" Section 10-11-2(M)(5); *see id.* (defining "municipal police member"); *see also* § 10-11-80 (regarding the applicability of Plan 5). PERA reviewed the job description of a Security Specialist provided to it by the County and concluded that the duties of a Security Specialist did

not meet the requirement of being "employed as police officers." Thus, PERA concluded that Security Specialists were correctly covered under General Member Plan 3. PERA's determination was not appealed.

{3}    In June 2013, the County's human resources office again contacted PERA, this time seeking a determination on the eligibility of the County's CSO position for inclusion in Police Plan 5. The County asked PERA to "reevaluate" the formerly named Security Specialist position because the "job description ha[d] been changed significantly." PERA reviewed the new job description and again determined that the duties described did not meet the requirement of "being employed as a police officer[,]" and therefore CSOs were covered under General Member Plan 3 rather than Police Plan 5.

{4}    The County immediately emailed PERA asking it to reconsider because the union representative and the union's attorney were certain that CSOs qualify for Police Plan 5 based on the state statute that requires CSOs to be peace officers. *See* NMSA 1978, § 4-41-11.1(A) (1981). PERA stood by its initial determination, finding that Section 4-41-11.1 does not alter the job duties of the CSO position.

{5}    The union filed an administrative appeal to the PERB on behalf of Petitioners. After a hearing, the hearing officer issued a recommended decision summarizing the testimony at the hearing and upholding PERA's determination. The PERB then issued an order adopting the hearing officer's recommended decision and denying

3

Petitioners' administrative appeal. Petitioners appealed to the district court, which upheld the determination of the hearing officer as adopted by the PERB. The district court denied Petitioners' motion for rehearing and this Court granted their petition for writ of certiorari.

**DISCUSSION**

{6}     We must determine whether CSOs are "employed as police officers" and therefore qualified for Police Plan 5, entitling them to greater benefits than the current plan under which PERA has classified the position.

{7}     "Upon a grant of a petition for writ of certiorari under Rule 12-505 [NMRA], this Court conducts the same review of an administrative order as the district court sitting in its appellate capacity, while at the same time determining whether the district court erred in the first appeal." *City of Albuquerque v. AFSCME Council 18 ex rel. Puccini*, 2011-NMCA-021, ¶ 8, 149 N.M. 379, 249 P.3d 510 (alteration, internal quotation marks, and citation omitted). "This Court applies the same statutorily defined standard of review as the district court. The district court may reverse an administrative decision only if it determines that the administrative entity acted fraudulently, arbitrarily, or capriciously; if the decision was not supported by substantial evidence in the whole record; or if the entity did not act in accordance with the law." *Miller v. Bd. of Cty. Comm'rs*, 2008-NMCA-124, ¶ 16, 144 N.M. 841, 192 P.3d 1218 (alterations, internal quotation marks, and citations omitted).

**{8}** An administrative decision "is arbitrary and capricious if it is unreasonable or without a rational basis, when viewed in light of the whole record[,]" and in evaluating the reasonableness of an agency's action, we "may take into account an agency's expertise." *Archuleta v. Santa Fe Police Dep't ex rel. City of Santa Fe*, 2005-NMSC-006, ¶ 17, 137 N.M. 161, 108 P.3d 1019. "Substantial evidence supporting administrative agency action is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gallup Westside Dev., LLC v. City of Gallup*, 2004-NMCA-010, ¶ 11, 135 N.M. 30, 84 P.3d 78. "We apply a de novo standard of review to administrative rulings regarding statutory construction." *N.M. Corr. Dep't v. AFSCME Council 18, AFL-CIO*, 2018-NMCA-007, ¶ 9, 409 P.3d 983 (alteration, internal quotation marks, and citation omitted).

**{9}** The Public Employees Retirement Act sets forth the applicability of the state's coverage plans for all public employees. Under the terms of Section 10-11-80, Police Plan 5 applies to "municipal police members." Municipal police members are public employees who are employed as police officers and who have taken the oath prescribed for police officers. Section 10-11-2(M)(5).

**{10}** The parties do not dispute that CSOs must take—and have, in fact, taken—the oath prescribed for police officers. They dispute only whether Petitioners *are employed as* police officers. Petitioners argue that CSOs are employed as police officers because they are required by statute to be law enforcement officers, and law

enforcement officers are municipal police members for purposes of Police Plan 5 coverage. CSOs, according to Petitioners, "are required to be sworn law[] enforcement deputies, equal in rank to all other [c]ounty deputies who qualify [for Police Plan] 5 under PERA." Petitioners also contend that the codification of the requirement that all CSOs be "commissioned as peace officers with full powers and responsibilities while within the confines of the county courthouse" in Section 4-41-11.1(B) compels their qualification for Police Plan 5.

{11} We are not persuaded that the terms of Section 4-41-11.1 dictate Petitioners' inclusion under Police Plan 5. We examine the duties and functions of a CSO, the testimony presented by Petitioners below, and the applicability of General Member Plan 3 under which CSOs are currently covered, and conclude that the PERB's decision is not arbitrary and capricious, is supported by substantial evidence, and is not contrary to law.

{12} The position description for CSOs, which the County provided to PERA to determine whether CSOs qualify for Police Plan 5, summarizes the position and lists specific duties. Generally, CSOs must "[p]erform assignments involving the enforcement of measures prescribed to ensure the protection of individuals and property associate[d] with the [d]istrict [c]ourts and adjacent facilities." More specifically, CSOs are tasked with the following:

1. Provide protective services for judges, court personnel, and other individuals attending the [d]istrict [c]ounty legal proceedings. Direct and advise the general public and court personnel about security procedures established for the courts and promote the understanding and compliance with safety standards developed to ensure the welfare of the people[;]

2. Escort prisoners during court proceedings using approved security methods and ensure that proper behavior is maintained. Conduct searches (as required) for weapons, materials, equipment, etc., that may jeopardize the safety of the general public. Maintain continuous surveillance of individuals within the courts and adjacent facilities[;]

3. Assist correction officer[s], police officer[s], and sheriff deputies with various activities associated with security[;]

. . . .

5. Conduct preliminary and follow-up investigations of criminal acts[; and]

6. Prepare and maintain accurate reports and records.

{13} CSOs must be currently certified and re-certifiable peace officers, and they must be currently certified and re-certifiable "law enforcement officer[s]." CSOs must pass a background investigation authorized and performed by the Bernalillo County Sheriff's Department, and they must pass a "[s]heriff's review process." According to the position description, CSOs must "possess the ability to understand and apply knowledge of policies and procedures for the [s]heriff's [d]epartment and [c]ounty [o]rdinances."

7

{14} CSOs, in appearance, look like police officers. The job description states that CSOs may be required to carry equipment associated with those employed as police officers, including a firearm, a duty belt, handcuffs, and a baton, and they wear an "officer's uniform," including a badge, and body armor, and operate security detection devices, for example, an x-ray detector or a camera. They may also be required to utilize materials associated with law enforcement, termed "various law enforcement/office/court forms and paperwork" in the job description submitted to PERA. CSOs are also required to take the oath of a police officer, and, as Petitioners assert, they are required by statute to be peace officers. *See* § 4-41-11.1(B).

{15} However, PERA draws a distinction between peace officers and police officers, and not all peace officers are police officers for purposes of PERA coverage. Peace officers, in the Public Employees Retirement Act, include any employee "with a duty to maintain public order or to make arrests for crime, whether that duty extends to all crimes or is limited to specific crimes[.]" Section 10-11-26.2(B). Some plans, such as Police Plan 5—as opposed to the general member plans available for peace officers—are reserved for "municipal police members," i.e., those employed as police officers. Section 10-11-80; *see id.* (stating Police Plan 5 applies to municipal police members); *see also* § 10-11-2(M)(5) (defining "municipal police member" as those employed as police officers). Not every public employee with law enforcement type

duties, e.g., peace officers who have a duty to maintain public order and make arrests, are employed as police officers and can claim coverage under a police plan.

{16} PERA classification turns on the duties and the performance of the duties assigned to a particular employee. *See Serrano v. State Dep't of Alcoholic Beverage Control*, 1992-NMCA-015, ¶ 6, 113 N.M. 444, 827 P.2d 159 (examining whether a public employee met the definition of "police officer" for purposes of determining whether he was improperly terminated by the agency that employed him; emphasizing that "[t]he duties performed primarily determine whether a person's employment position is of a law enforcement nature"). Position qualification under Police Plan 5 depends not only upon the name of a position and the formally stated requirements of a position as listed in a description of the position. Importantly, PERA classifications are also based upon the substantive aspects of the work called for by the position.

{17} Presumably, Police Plan 5 provides greater retirement benefits to those that qualify than other plans because those employed as police officers endure greater risks and hazards in the performance of their jobs. *See* § 10-11-27.2(B) (explaining that the Legislature intended another state police officer plan to cover those employed as police officers because "it is appropriate to recognize the hazardous nature of the work performed by state police officers"). The Legislature is justified in providing higher coverage to those in higher-risk jobs, as it appears to have done with the creation of Police Plan 5. Having recognized that not all those required to take the oath of a peace

9

officer are required to perform duties with the same attendant safety concerns, PERA created multiple categories and coverage plans for peace officers. General Member Plan 3, provided for in Section 10-11-26.2(B), provides coverage for peace officers, specifically, peace officers whose duties include maintaining public order or making arrests for crime, "whether that duty extends to all crimes or is limited to specific crimes[.]" Section 4-41-11.1(B), upon which Petitioners primarily rely, requires only what General Member Plan 3 also requires of those it covers: CSOs must be commissioned as peace officers. It says nothing more about the nature of their work duties and the circumstances under which those duties are to be performed.

{18}     CSOs do not regularly operate vehicles in the performance of their duties, a task that would increase the risk associated with their work. *See* § 4-41-11.1(B) (stating that CSO work is confined to the county courthouse). CSOs also only have jurisdiction to perform their assigned tasks "within the confines of the county courthouse or as otherwise specified by the court." *Id*. According to the testimony of a CSO before the district court, CSOs "[b]asically . . . do the same thing [as] a deputy does in the field" except they are "not in a patrol car," and their duties are "confined to the district courthouse." The risk of danger associated with their job duties—e.g., investigation of crime and initiating arrests—is limited to an area where those duties are less likely to occur in conjunction with the dangers of those same duties were they to be performed elsewhere, say, for example, in a high crime area of the city at night

10

or in a vehicle patrolling roads and highways. Thus, we cannot conclude that the PERB's decision was without a rational basis and therefore arbitrary or capricious. *See Archuleta*, 2005-NMSC-006, ¶ 17.

{19} Additionally, the position description, which explains that the function of CSOs is primarily to provide security, also supports the decision below, and we conclude that the PERB's determination was not contrary to law and it was supported by substantial evidence. *See* § 2.80.100.7(M) NMAC (defining, by PERA regulation, "police member" as a person "who is employed as a police officer," *not* to include the following positions: "volunteers, juvenile correctional officer members, or employees who do not perform primarily police functions including, but not limited to jailers, cooks, matrons, radio operators, meter checkers, pound employees, crossing guards, police judges, park conservation officers, and game wardens"). The job description of a CSO provided to PERA supports its determination in several ways. Generally, the summary of the position declares that CSOs are primarily responsible for tasks that ensure the protection of individuals and property associated with the courts. The essence of their work is, in substance and in name, security. More specifically, they are to provide "protective services," advise "about security procedures," and "promote the understanding and compliance with safety standards." CSOs assist law enforcement officers (correction officers, police officers, and sheriff deputies); they are not employed to work as one. Despite Petitioners' contention—that CSOs must

11

have knowledge of law enforcement functions; they may be equipped with a sidearm; they must "maintain law and order"; they face the potential for physical confrontations and exposure to bodily harm or death; and they must take quick action in emergency situations—we review the whole record for evidence that supports the conclusion reached by the agency, not for evidence that may substantiate the opposite result. *See Las Cruces Prof'l Fire Fighters v. City of Las Cruces*, 1997-NMCA-044, ¶ 12, 123 N.M. 329, 940 P.2d 177. Both the job description and the actual duties performed by CSOs support the agency's decision.

{20}    Finally, we address Petitioners' argument that the district court order is erroneous for finding that CSOs "are not employees of the [s]heriff's [d]epartment[,]" and that they are not employed as police officers, "rather they are employed by the [c]ourt." Petitioners contend that testimony and evidence show that the CSOs are employees of the sheriff's department, and that they are sworn and commissioned deputies, "who happen to be assigned to the [c]ourts." The employment supervisor for the County's human resources office testified that the sheriff's department does the recruiting for CSO positions, interviews and makes selections for the position and, therefore, it is the sheriff's department, not the court to which the CSO is assigned. But whether it is the sheriff's department, or some other agency or subdivision, that employs the CSOs is irrelevant. The analysis hinges on the substance of the duties called for by the position. Police Plan 5 is intended for those *employed as police*

12

*officers*; it is the nature of the work and the possible limitations and restrictions placed on the performance of the work, which could thereby alter the attendant risks of danger and hazards associated with the work, that determines which public employees are entitled to receive the benefits of the plan Petitioners seek, not the specific department that employs them. *See Serrano*, 1992-NMCA-015, ¶ 6.

**CONCLUSION**

{**21**}    For the foregoing reasons, we affirm the district court's affirmance of the PERB's order.

{**22**}    **IT IS SO ORDERED.**


_____
**STEPHEN G. FRENCH, Judge**


**WE CONCUR:**


_____
**LINDA M. VANZI, Chief Judge**


_____
**EMIL J. KIEHNE, Judge**


13