This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-39535

**BRYAN MARTINEZ,**

Petitioner-Appellant,

and

**LETICIA MONTOYA, as Personal Representative of the ESTATE OF DAVID MONTOYA, Deceased,**

Petitioner-Appellant,

v.

**NEW MEXICO TAXATION & REVENUE DEPARTMENT, MOTOR VEHICLE DIVISION,**

Respondent-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Matthew J. Wilson, District Court Judge**

Dan Cron Law Firm, P.C.
Dan Cron
Santa Fe, NM

Kitren Fischer Law, LLC
Kitren Fischer
Santa Fe, NM

for Appellants

Richard Pener, Special Assistant Attorney General
Santa Fe, NM

for Appellee

The Law Office of Jamison Barkley, LLC
Jamison Barkley
Santa Fe, NM

Angelica Hall
Albuquerque, NM

for Amicus Curiae New Mexico Criminal Defense Lawyers Association

**MEMORANDUM OPINION**

**IVES, Judge.**

**{1}**     In this consolidated appeal, Petitioners Bryan Martinez and David Montoya appeal administrative hearing officers' decisions to sustain Petitioners' license revocations under the Implied Consent Act (ICA), NMSA 1978, Section 66-8-105 to -112 (1978, as amended through 2019). Because Mr. Montoya died during the pendency of this appeal,[1] we consider only Petitioner Martinez's appeal. Petitioner argues that the Administrative Hearings Office (AHO) violated separation of powers principles enshrined in the New Mexico Constitution when it denied Petitioner his statutory right to an in-person hearing.[2] *See* N.M. Const. art. III, § 1. On the basis of the arguments presented by the parties, we reverse and remand for further proceedings. We emphasize that we issue this nonprecedential memorandum opinion solely for the benefit of the parties.

**DISCUSSION**

**{2}**     We may reverse an administrative decision only if we find "that the administrative entity acted fraudulently, arbitrarily, or capriciously; if the decision was not supported by substantial evidence in the whole record; or if the entity did not act in accordance with the law." *Miller v. Bd. of Cnty. Comm'rs*, 2008-NMCA-124, ¶ 16, 144 N.M. 841, 192 P.3d 1218 (text only) (citation omitted); *see also* § 66-8-112(H) (providing for statutory review of ICA license revocations); Rule 1-074(R) NMRA (stating the standards of review for administrative appeals). In conducting this analysis, we review conclusions of law de

---

1In a response to this Court's order to show cause, Mr. Montoya's appellate counsel conceded that the decedent "cannot now receive any actual relief." As a result, the claims of Mr. Montoya—and his estate— are moot. *See Leonard v. Payday Pro./Bio-Cal Comp.*, 2008-NMCA-034, ¶ 8, 143 N.M. 637, 179 P.3d 1245 ("An appeal is moot when no actual controversy exists, and an appellate ruling will not grant the appellant any actual relief.") (text only) (citation omitted). We note, however, that the mootness of Mr. Montoya's claims does not change the substance of our analysis because the cases were consolidated before briefing in this case, and thus both Petitioners made the same argument on the merits of the issue discussed in this opinion.

2Mr. Martinez also challenges the AHO's action on procedural due process grounds, but because we reverse his license revocation on separation of powers grounds, we do not reach the due process issue.

novo. *See City of Albuquerque v. AFSCME Council 18 ex rel. Puccini*, 2011-NMCA-021, ¶ 8, 149 N.M. 379, 249 P.3d 510.

**{3}** In this appeal we are presented with an apparent conflict between a statutory right to an in-person hearing under the ICA, and public health restrictions that were imposed during the COVID-19 pandemic. On the one hand, one of the ICA's statutory provisions—Section 66-8-112(B)—guarantees that license revocation hearings are to be held in-person. *See Evans v. N.M. Tax'n & Revenue Dep't*, 1996-NMCA-080, ¶ 14, 122 N.M. 216, 922 P.2d 1212 (noting that "in the absence of clear legislative intent to the contrary, we will read [Section 66-8-112(B)'s] language, a 'hearing shall be held in the county,' to mean an in-person hearing held in one place in the relevant county"); *Martinez v. N.M. Tax'n & Revenue Dep't*, 2023-NMCA-049, ¶ 34, 534 P.3d 248 (acknowledging that "an in-person hearing is required under Section 66-8-112"). On the other hand, at the time of Petitioner's requested ICA license revocation hearing, a state-wide Public Health Emergency Order (PHEO) mandated—among other things—that all businesses not deemed "essential" cease their in-person operation. Dep't of Health (DOH), Public Health Order at 2, 4 (N.M. Mar. 23, 2020).[3] In a recent case, we held that the AHO was a "nonessential business" for the purposes of the PHEO. *Martinez*, 2023-NMCA-049, ¶ 19.

**{4}** As such, for as long as the PHEO remained in effect, these two legal mandates stood in direct conflict with each other. Ultimately, during this period of conflict, the AHO chose to comply with the PHEO rather than the statute. In a Standing Order issued two days after the PHEO, the Chief Hearing Officer noted that the in-person statutory mandate of Section 66-8-112(B) presented "a dilemma as it relates to the current, evolving public health crisis" but concluded that "conducting remote hearings for the time being is the action most consistent with meeting the public health directive and protecting the public health and welfare of all involved in the hearing process and the residents of New Mexico." Amended Standing Order #20-01 of the Chief Hearing Officer at 2 (Mar. 25, 2020) (Standing Order). As a consequence, Petitioner was not afforded an in-person revocation hearing.

**{5}** We recently addressed certain aspects of this conflict in *Martinez*. There we acknowledged that the statute conflicts with the PHEO and the Standing Order, but we declined to resolve that conflict because we lacked any developed argument on the issue. *See Martinez*, 2023-NMCA-049, ¶ 36.

**{6}** In contrast, here Petitioner has adequately developed an argument on this point. Petitioner contends that the AHO lacked the authority to unilaterally "change" or suspend Section 66-8-112(B)'s guarantee, and in so doing it violated separation of powers principles by "encroach[ing] upon the authority of the [L]egislature." In essence, Petitioner argues that by denying this statutory right, the AHO, which is a part of the executive branch, effectively changed the law—a quintessentially legislative function.

---

3 *See* **Erreur ! Document principal seulement.** https://www.governor.state.nm.us/wp-content/uploads/2020/03/COVID-19-DOH-Order-fv.pdf.

**{7}** Petitioner contends that neither the PHEO nor the relevant emergency powers statutes "confer upon the AHO the power to change or ignore the law in an emergency." As it relates to the PHEO, we agree with Petitioner to the extent that the PHEO itself does not explicitly state whether its provisions can function to override a statutory right. As for the emergency powers statutes, we also agree with Petitioner to the extent that nothing in the text of the relevant emergency powers statutes (Public Health Emergency Response Act (PHERA), NMSA 1978, §§ 12-10A-1 to -19 (2003, as amended through 2015)); All Hazard Emergency Management Act (AHEMA), NMSA 1978, §§ 12-10-1 to -10 (1959, as amended through 2007)); or the supporting nonemergency statutes (Public Health Act (PHA), NMSA 1978, §§ 24-1-1 to -44 (1973, as amended through 2019); Department of Health Act (DOHA), NMSA 1978, §§ 9-7-1 to 18 (1977, as amended through 2019)) explicitly gives executive branch officials the power to alter or suspend statutes during an emergency.

**{8}** Petitioner also cites *State ex rel. Riddle v. Oliver*, 2021-NMSC-018, 487 P.3d 815. In *Riddle*, a group of county clerks (with a stipulation from the New Mexico Secretary of State) petitioned our Supreme Court to issue a writ of mandamus that would compel the Secretary of State to mail absentee ballots directly to all registered voters for the 2020 primary election. *Id.* ¶¶ 1, 12-15. The petitioners argued that this ad hoc election procedure was necessary because, due to the COVID-19 pandemic, "it would be impossible to safely conduct in-person voting." *Id.* ¶ 12. Despite acknowledging these safety concerns, the Court declined to issue the stipulated writ because mailing absentee ballots directly to all registered voters was expressly prohibited by the Election Code. *Id.* ¶¶ 3, 37-38. When the petitioners asked the Court to rely on its equitable powers to "to craft a remedy that departed from the statutory scheme in order to protect public health," *id.* ¶ 38, the Court again declined to do so, stating: "Our equitable powers do not extend so far as to allow us to disregard procedures set forth by statute or to rearrange the Election Code. To do so would violate the separation of powers." *Id.* ¶ 40. Petitioner reads *Riddle* to stand for the proposition that statutory mandates cannot be ignored or altered by a nonlegislative governmental branch simply because of concerns related to public health—no matter how valid those concerns might be.

**{9}** As these arguments make clear, Petitioner in this appeal does not contend that the PHEO itself was invalid. Rather, he argues that "the PHEO was unconstitutional as applied in this case"—i.e., that the PHEO cannot be applied in a manner that suspends Petitioner's statutory right. This argument, as we have seen, is mainly rooted in (1) an apparent lack of explicit textual or statutory authority for executive emergency powers actions to override or suspend statutes, and (2) reasoning from *Riddle* that suggests that statutory mandates cannot be set aside by nonlegislative actors solely on grounds related to public health concerns.

**{10}** The New Mexico Department of Taxation and Revenue (the Department) does not persuasively respond to Petitioner's arguments. The Department devotes much of its answer brief to arguing that Section 66-8-112(B) does not actually require an in-person hearing. In support of this contention, the Department offers a plain language

analysis of the statute, noting that the text only requires that the hearing "shall be held in the county in which the offense for which the person was arrested took place" *Id.* However, this argument is foreclosed by precedent; this Court has held that the statutory language requires an in-person hearing. *Evans*, 1996-NMCA-080, ¶ 14. The Department goes on to argue that this precedent is not binding here because the "circumstances before [this] Court are substantially different than those present in *Evans*." We are not persuaded that *Evans*' construction of Section 66-8-112(B)—are rooted in legal principles concerning the need for credibility assessments, *see, e.g.*, *Evans*, 1996-NMCA-080, ¶ 13—is somehow context-dependent, and the Department offers no compelling argument for this proposition. Moreover, the Department has not asked us to overrule *Evans*, which remains valid law. *See Martinez*, 2023-NMCA-049, ¶ 34.

**{11}** Next, the Department attempts to more squarely confront Petitioner's separation of powers argument. However, in so doing, the Department offers no analysis of the PHERA, the AHEMA, the PHA, or the DOHA; nor does it craft any argument as to why or how these statutes—explicitly or implicitly—confer upon the executive branch the power to suspend or modify statutes during an emergency. Instead, the Department simply states that "our Supreme Court held the PHEOs to be legitimate exercises of authority granted by the Legislature to the executive. Accordingly, the AHO cannot have violated the separation of powers by acting in accordance with the PHEOs." We are not persuaded that this conclusion necessarily follows from its premise. In short, we do not believe that the fact that our Supreme Court has upheld the power of the executive under the PHEOs—in certain circumstances—necessarily answers the question of whether the PHEOs were unconstitutional when applied in a manner that deprived Petitioner of his statutory right under Section 66-8-112(B). To further illustrate, we briefly discuss a case on which the Department relies: *Grisham v. Reeb*, 2021-NMSC-006, 480 P.3d 852.

**{12}** In *Reeb*, our Supreme Court was called upon to answer the following question regarding executive authority during the public health emergency: "Did New Mexico's Legislature empower [executive branch officials] to enforce public health emergency orders restricting business operations through the civil penalty provision contained in Section 12-10A-19 of the . . . PHERA?" *Id.* ¶ 1. The Court answered this question in the affirmative, holding that the PHERA and its "concurrent and complementary statutes" authorized the Secretary of Health to issue PHEOs that restricted private business operations, and also that the PHERA's civil penalty provision, Section 12-10A-19, could be applied to enforce those restrictions. *Reeb*, 2021-NMSC-006, ¶¶ 1, 15. The Court reached these legal conclusions based on an in-depth construction of the PHERA and other relevant statutes. *See id.* ¶¶ 25-44. However, in *Reeb*, the Court did not explicitly discuss whether a PHEO's mandates would prevail if those mandates came into conflict with a statutory right, as that question was not before the Court. We note that cases are not authority for propositions not considered, *Sangre de Cristo Dev. Corp. v. City of Santa Fe*, 1972-NMSC-076, ¶ 23, 84 N.M. 343, 503 P.2d 323, and the Department has not offered any argument as to why *Reeb*'s holdings—or the rationale used to reach those holdings—would allow the Department not to comply with a clear statutory

mandate. We decline to develop such an argument for the Department. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("To rule on an inadequately briefed issue, [the] Court would have to develop the arguments itself, effectively performing the parties' work for them.").

**{13}** The Department's attempt to distinguish *Riddle* is unpersuasive for similar reasons. The Department argues that Petitioner's reliance on *Riddle* is "misplaced" because the proposed nonlegislative action in that case was contrary to the Election Code, which "contains dozens of specific statutory mandates concerning the conduct of elections" and "hundreds of individual provisions," whereas Section 66-8-112(B) is merely "a single sentence in a single statutory provision interpreted [twenty-eight] years ago to prohibit [the Department] from conducting telephonic license revocation hearings as a cost savings measure." The Department offers no argument as to why the length or complexity of a statute is a significant factor in assessing whether it can be suspended or altered by nonlegislative action during an emergency, and we see no sound basis for drawing such a distinction. Although it is possible that *Riddle* is distinguishable on some other ground, the Department makes no argument to this effect in either its answer brief or its supplemental brief, and we decline to develop such on argument on the Department's behalf. *See Elane Photography*, 2013-NMSC-040, ¶ 70.

**{14}** The Department's final argument is that, when two legal requirements conflict, "the court resolving the conflict must determine whether, under the specific circumstances presented, compliance with the first or the second provision is most consistent with the public good." Pursuant to this theory, the Department offers various rationales for why the COVID-19 related suspension of in-person license revocation hearings amounted to good policy. Even if we were to agree with these statements of policy, the Department has offered no legal argument as to why the statutory guarantee of Section 66-8-112(B) may be trumped by a judicial determination that complying with that guarantee would not be "consistent with the public good." In the absence any argument or authority to support such an approach, we decline to adopt it.

## CONCLUSION

**{15}** Based on the arguments presented by the parties in this case, we reverse and remand this matter to the AHO so that Petitioner may receive an in-person license revocation hearing as required by Section 66-8-112(B).

**{16}  IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**MICHAEL D. BUSTAMANTE, Judge,**
**retired, Sitting by designation**